**LAW OFFICE OF TODD J. KROUNER**
93 North Greeley Avenue
Chappaqua, New York 10514
(914)238-5800
Todd J. Krouner, Esq. (TK 0308)
Attorneys for Plaintiffs and Class



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIA GALLO, ANDREW KOPLIK and DOROTHY RABSEY, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | **10 CIV 08125** |
| CABLEVISION SYSTEMS CORP., | **JUDGE KARAS** |
| Defendant. | |

Plaintiffs Julia Gallo, Andrew Koplik and Dorothy Rabsey, by and through their

attorneys, Law Office of Todd J. Krouner, hereby complain of defendant Cablevision Systems

Corp. and respectfully state and allege upon information and belief as follows:

### PRELIMINARY STATEMENT

1.      Plaintiffs Julia Gallo ("Gallo"), Andrew Koplik, ("Koplik") and Dorothy Rabsey

("Rabsey") (collectively "Plaintiffs") bring this class action, individually and on behalf of others

similarly situated (collectively the "Class"), seeking recovery of monies paid to defendant

Cablevision Systems Corp. ("Cablevision") in consideration of cable television programming.

## INTRODUCTION

**A.    Cablevision's Negotiating Strategy Has Caused a Material and Substantial Detriment to its Customers**

2.      As a result of a contract dispute with the News Corporation ("News Corp."), Cablevision has failed to provide its customers with certain programming and networks since October 16, 2010, including without limitation WNYW a/k/a Fox 5, WWOR a/k/a the My9 Channel, WTXF a/k/a Fox 29, Fox Business, National Geographic Wild and Fox Deportes (collectively, the "Fox Channels").

3.      As reported in the October 24, 2010 edition of the New York Times:

> The News Corporation's Fox and local stations in the New York metropolitan area have been blacked out for more than a week in three million homes served by Cablevision.  The negotiators have dug in their heels; the two sides have not spoken to each other since Thursday afternoon. . . .  Cablevision says it wants the government to intervene . . . Cablevision executives say privately that they believe the F.C.C. has the authority to require the News Corporation to put its stations back on the cable system . . . .
> Cablevision has tried to encourage any action that would bring in an outside force, like an arbitrator or mediator, while restoring the News Corporation's channels to its customers. . . .
> Cablevision customers remain mired in the middle.  Last week, their set-top boxes were turned automatically to Channel 1999, where a message on a loop blamed the News Corporation for trying to "extort unreasonable and unfair fee increases."

Brian Stelter and Bill Carter, Fox-Cablevision Dispute May Obstruct Customers' View of World Series, N.Y. Times, October 24, 2010, at A1.

4.      This lawsuit seeks restitution for Cablevision's three million customers, who have been deprived of the Fox Channels, which have been replaced by Cablevision's annoying and self-serving loop, which whines about News Corp.'s supposed failure to negotiate in good faith. In the meantime, while depriving its customers of the Fox Channels' programming, to date, Cablevision has refused to provide any rebate to its customers, who pay an average of approximately $150 per month to Cablevision.

**B.      Cablevision's Customers' Loss of Service**

5.      Cablevision's customers have suffered a substantial and material reduction in the broadcast and programming service that they receive from Cablevision, in terms of both content and duration.

6.      In terms of political, sports and entertainment programming, the service interruption comes at an important time.

7.      The Fox Channels comprise one of the four major television networks in the United States.  It produces and broadcasts important and popular television content, including without limitation:

- New York Giants football;

- Major League Baseball World Series;

- Major League Baseball National League Championship Series;

- National Football League Super Bowl XLV

- Glee;

- House;

- American Idol;

- Hell's Kitchen;

- The Simpsons;

- Family Guy;

- The Wendy Williams Show;

- Dr. Oz;

- Good Day New York; and

- Fox 5 News.

8.      The Fox Channels also provide a distinctive viewpoint in the political speech arena, which Cablevision's customers are being deprived of just days before a critical mid-term election in the United States.

9.      Glee, a Fox program, is consistently among the highest rated shows on television. For example, the September 28, 2010, broadcast brought in 13.3 million viewers and among viewers aged 18-49, the show ranks third in the Nielsen Ratings for primetime television.  The show's musical recordings are a smash crossover success in the music industry.  As reported in the current issue of <u>Rolling Stone Magazine,</u> the show has placed seventy-five (75) singles on the "Hot 100" music charts, surpassing the Beatles previous record of seventy-one.  "In the News," <u>Rolling Stone Magazine</u>, October 28, 2010, at 19.

10.     At a time when many football fans are unable to afford to attend New York Giants football games, Cablevision customers are unable to watch Giants' games, which are carried on Fox, in their homes.

11.     Cablevision customers who are Philadelphia Phillies' baseball fans were unable to watch their team compete in the National League Championship Series, as those games were also carried on Fox.

12.     To date, Cablevision has failed to carry the Fox Channels for ten (10) days and counting, with no apparent end in sight.

**JURISDICTION AND PARTIES**

**A.     Plaintiffs, Class Members and Subclasses**

13.     Gallo is a Cablevision customer who resides at 1874 Hanover Street, Yorktown Heights, New York 10598.

14.     Koplik is a Cablevision customer who resides at 16 Laurel Hill Road, Mountain Lakes, New Jersey 07046.

15.     Rabsey is a Cablevision customer who resides at 135 Waterbury Avenue, Stamford, Connecticut 06902.

16.     In addition to the above-named Plaintiffs and the Class, there are three (3) relevant subclasses in this matter:

> (a)     The "New Jersey Subclass" consists of all Cablevision customers residing in the State of New Jersey;
>
> (b)     The "New York Subclass" consists of all Cablevision customers residing in the State of New York; and
>
> (c)     The "Connecticut Subclass" consists of all Cablevision customers residing in the State of Connecticut.

**B.      Cablevision**

17.     Cablevision is a corporation created and existing under the State of Delaware, with headquarters located at 1111 Stewart Avenue, Bethpage, New York 11714.

18.     Cablevision is the cable television and internet service arm of an international media conglomerate, with revenues in excess of $4 billion annually, which produces and distributes media content to hundreds of millions of consumers worldwide.

19.     According to Cablevision, it operates the nation's largest cable cluster, including more than five million households and businesses in the New York and Philadelphia metropolitan broadcasting areas.  In certain locations, Cablevision is the only available provider of cable services.

20.     In addition to the News 12 and MSG Varsity television networks, which Cablevision owns and operates, its subsidiary Rainbow Media Holdings ("Rainbow") owns and

operates television networks AMC, IFC, Sundance Channel and WEtv and IFC Entertainment, a film production company.

21.     Cablevision was also majority owner and operator of Madison Square Garden and its related sports and entertainment properties, including the New York Knicks and Rangers, until February 2010, when the publicly traded Madison Square Garden Inc. spun off from Cablevision.

22.     James Dolan is president and chief executive officer of Cablevision, executive chairman of Madison Square Garden, Inc., and the former chief executive officer of Rainbow.

23.     His father, Charles Dolan, is the founder and chairman of Cablevision, and sits on the board of directors of Madison Square Garden.

24.     This action is brought pursuant to the Class Action Fairness Act of 2005.  28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## **BACKGROUND FACTS**

25.     Prior to October 16, 2010, the Class members each individually contracted with Cablevision to receive cable television programming from Cablevision, including the Fox Channels.

26.     Cablevision advertised and/or otherwise represented that it carried the Fox Channels on its Optimum cable television service.

27.     Based upon those representations, the Class members entered into contracts with Cablevision for cable television.

28.     On or about October 15, 2010, Cablevision's agreement with News Corp., pursuant to which Cablevision carried the Fox Channels, expired.

29.     According to News Corp., Cablevision has rejected numerous proposals from News Corp. to enter into a new agreement, including proposals on the same terms and conditions of other cable providers in the New York metropolitan market.

30.     Cablevision has taken the untenable position of failing on the one hand to provide its customers with Fox Channels' programming, while on the other hand failing to make restitution to its customers for this substantial and material interruption of service.

31.     Pursuant to its own terms of service, Cablevision promised to give each customer a credit for each "known program or service interruption in excess of 24 consecutive hours. . ." See Agreement for iO TV, ¶ 4 (available at http://www.optimum.net/Terms/iO).

32.     Cablevision has failed to offer, let alone provide, any such credit to the Class members.

## CLASS REPRESENTATION ALLEGATIONS

33.     Plaintiffs bring this class action on behalf of the Class consisting of all customers who contracted with Cablevision to receive cable television service on or after October 16, 2010, including the New York Subclass, the New York New Customer Subclass, the New Jersey Subclass.

34.     Excluded from each Class and Subclass are Cablevision's officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

35.     Plaintiffs are members of the Class that they seek to represent.

36.     Plaintiffs claims are typical of the claims of the Class because Plaintiffs sustained material and substantial damages as a result of Cablevision's interruption of service.

37.     There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual class members, including without limitation: (i) whether Cablevision breached its agreements with the Class members; (ii) whether Cablevision has been unjustly enriched at the Class members' expense; (iii) whether Cablevision engaged in unfair, deceptive and/or fraudulent practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., the New York General Business Law § 349, et seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq.; (iv) the damages to which the Class members are entitled for Cablevision's substantial and material interruption of service; and (v) whether Cablevision should be enjoined from employing its negotiating strategies at the expense of its customers in the future.

38.     All common questions are able to be resolved through the same factual occurrence as specifically and/or generally alleged herein.

39.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and each Subclass

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

40.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "39" with the same force and effect as if set forth more fully herein.

41.     Pursuant to its contracts with each Class member, Cablevision is required to (i) provide the Fox Channels to each of the Class members; and (ii) give each of the Class members with a credit on account of any interruption of service.

42.     Cablevision has failed to (i) carry the Fox Channels; or (ii) provide any credit to the Class members for the substantial and material interruption of service related to the Fox Channels.

43.     The Class members have suffered damages as a result of Cablevision's breach of contract.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Unjust Enrichment)

44.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "43" with the same force and effect as if set forth more fully herein.

45.     The Class members paid Cablevision with the reasonable expectation that they would receive full, uninterrupted service, including the Fox Channels.

46.     Cablevision knew, or reasonably should have known, that it would not be able to provide such service to the Class members.

47.     Cablevision, nonetheless, accepted the Class members' payments without making restitution for the substantial and material interruption of service concerning the Fox Channels.

48.     Each of the Class members has suffered damages as a result of Cablevision's conduct.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Consumer Fraud – New York Subclass)

49.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "48" with the same force and effect as if set forth more fully herein.

50.     Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

51.     Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

52.     Cablevision failed to advise the New York Subclass members that it would cease providing the Fox Channels.

53.     Cablevision, nonetheless, extracted payment in full for monthly service in accordance with its contracts with each of the New York Subclass members.

54.     Based upon Cablevision's actions, the New York Subclass members each paid Cablevision's monthly fee, in contemplation of receiving the Fox Channels' programming

55.     Cablevision's actions were consumer-oriented, directed towards the New York Subclass members.

56.     Cablevision's actions were materially misleading.

57.     Each of the New York Subclass members has suffered damages as a result of Cablevision's conduct.

58.     Cablevision's actions violate New York's General Business Law §§ 349 and 350, and constitute deception, false promise, misrepresentation, concealment, suppression, and omission of material fact in its advertising.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Consumer Fraud – New Jersey Subclass)**

59.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "58" with the same force and effect as if set forth more fully herein.

60.     Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

61.     Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

62.     Cablevision failed to timely advise the New Jersey Subclass members that it would cease providing the Fox Channels.

63.     Cablevision, nonetheless, demanded payment in full for monthly service in accordance with its contracts with each of the New Jersey Subclass members.

64.     Based upon Cablevision's actions, the New Jersey Subclass members each paid the monthly fee.

65.     Accordingly, Cablevision engaged in conduct prohibited by the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

66.     The New Jersey Subclass members have suffered an ascertainable loss, as a result of Cablevision's conduct.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Consumer Fraud – Connecticut Subclass)

67.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "66" with the same force and effect as if set forth more fully herein.

68.     Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

69.     Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

70.     Cablevision failed to timely advise the Connecticut Subclass members that it would cease providing the Fox Channels.

71.     Cablevision, nonetheless, demanded payment in full for monthly service in accordance with its contracts with each of the Connecticut Subclass members.

72.     Based upon Cablevision's actions, the Connecticut Subclass members each paid the monthly fee.

73.     Cablevision has engaged in unlawful, immoral, unethical and/or otherwise unfair conduct, prohibited by the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq.

74.     The Connecticut Subclass members have suffered a substantial injury as a result of Cablevision's conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Permanent Injunctive Relief)

75.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "74" with the same force and effect as if set forth more fully herein.

76.     Cablevision's contract with News Corp. to carry the Fox Channels expired on October 15, 2010, at 11:59 p.m. (the "Deadline").

77.     Cablevision played a game of chicken with News Corp. at the expense of Cablevision's customers, and failed to engage in constructive negotiations with News Corp. prior to the expiration of the Deadline.

78.     After the expiration of the Deadline, Cablevision requested that News Corp. enter into binding arbitration with it to resolve their contractual differences.   The tardiness of

12

Cablevision's efforts and its belated sense of urgency is of scant comfort to its customers, who are deprived of the Fox Channels.

79.     There is no adequate remedy at law, including monetary damages which may compensate class members for injuries resulting from the loss of unique programming content, such as Philadelphia Phillies baseball fans deprived of watching a playoff game, or Giants football fans deprived of watching their team surge toward the playoffs.

80.     Given the public interest involved, the ongoing nature of the injury, and the prospect for repeated occurrences, an equitable remedy is warranted.

81.     The public interest would be served by a permanent injunction that enjoins Cablevision in the future from ignoring its contractual deadlines with content providers, and compels it to enter into a dispute resolution mechanism that insures resolution of any such disputes, in the absence of a consensual agreement, so that its customers not be deprived of programming content.

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of the Class and each Subclass seek judgment as follows:

(a)     awarding each of the Class members damages equal to the greater of Plaintiffs' cost of one (1) month of Cablevision service, totaling approximately $450,000,000, or the cost of service for such longer duration should the interruption in Fox Television programming exceed four (4) weeks, plus interest and attorneys' fees;

(b)     awarding any and all remedies available under the New York General Business Law §§ 349, 350, including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(c)     awarding any and all remedies available under the New Jersey Consumer

Fraud Act, N.J.S.A. § 56:8-1 et seq., including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(d)     awarding any and all remedies available under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq., including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(e)     entering permanent restraints, directing that any future broadcast contracts entered into by Cablevision have mandatory dispute resolution mechanisms, requiring resolution of any contract dispute prior to the expiration of such contract;

(f)     awarding punitive damages;

(g)     awarding Plaintiffs attorneys' fees and costs incurred in prosecuting this action; and

(h)     granting Plaintiffs such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.

**LAW OFFICE OF TODD J. KROUNER**

Dated: October 26, 2010          By: _Todd J. Krouner_

Todd J. Krouner (TK 0308)
Attorneys for Plaintiffs and Class
93 North Greeley Avenue
Chappaqua, New York 10514
Telephone:     (914) 238-5800
info@krounerlaw.com

14